**J. Ray MERKLEY, Plaintiff and Appellant,**

v.

**John C. BEASLIN, Defendant and Respondent.**

**No. 880191–CA.**

Court of Appeals of Utah.

July 26, 1989.

Wendell E. Bennett (argued), Salt Lake City, for plaintiff and appellant.

Henry S. Nygaard, Beaslin, Nygaard, Coke & Vincent, Salt Lake City, John R. Anderson (argued), Beaslin, Nygaard, Coke & Vincent, Vernal, for defendant and respondent.

Before BENCH, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Plaintiff/appellant, J. Ray Merkley, appeals from a summary judgment dismissing his malpractice action against defendant/respondent, John C. Beaslin. The trial court concluded that if respondent committed any legal malpractice, it occurred in 1976 when respondent drafted legal documents for the sale of a business for appellant, and, therefore, that Merkley's action by the statute of limitations. We reverse and remand.

We recite only the pertinent facts. In 1975, respondent, an attorney licensed to practice law in Utah, assisted appellant in setting up a recreational vehicle dealership corporation, Merkley Motors, Inc., in Vernal, Utah. Appellant and his wife, Janet, owned ninety-nine percent of the capital stock in the corporation.

In February 1976, Tal R. Merkley, who owned one percent of the capital stock, his wife Wyoma, Charles Glen Merkley, and his wife Charlene (the other Merkleys) offered appellant and his wife $120,000.00 for the business. Appellant retained respondent to prepare the documents necessary to sell his capital stock to the other Merkleys. The sale was to be secured by the real property upon which the business was located and by the business's unencumbered inventory. On February 23, 1976, the parties executed the sale. On May 4, 1976, respondent filed a financing statement (UCC–1) on the unencumbered inventory and personal property owned by Merkley Motors, Inc. with the Lieutenant Governor's office. The UCC–1 listed Merkley Motors as the debtor, R. Jay and Janet Merkley as the secured parties, and was signed by Tal R. and Charlene Merkley.

According to appellant, although respondent filed the UCC–1, he did not institute any follow-up procedures for renewal of the document on a periodic basis nor did he advise appellant that it would have to be renewed in five years to retain its efficacy. Neither appellant nor respondent renewed the UCC–1 filing in May 1981, as required to maintain appellant's security interest.

On December 6, 1983, approximately two years after the UCC–1 filing should have been renewed, Merkley Motors filed for bankruptcy. Appellant filed a timely proof of claim, but the record does not indicate what, if any, distribution he received.

Appellant argues that respondent continued to represent him in other legal matters, but neglected to handle this matter. However, in his deposition, appellant stated that he had no further communications with respondent until just before Merkley Motors filed for bankruptcy, over seven years later. Respondent indicates that appellant left Vernal and moved to Salt Lake City shortly after the execution of the sales contract, and terminated his lawyer-client relationship with him.

On February 23, 1984, Merkley Motors's bankruptcy auction took place in Vernal, Utah. Although appellant claims that the value of the property which was supposedly secured by the UCC–1 was in excess of the amount of money still owed on the contract, the net proceeds of the sale of all property not secured by other creditors amounted to only $7,669.23. Appellant received notice of the bankruptcy sale, was present, and bid about $4,000.00 for the bulk of the items. These items were sold to a third party for approximately $4,200.00.

Appellant brought a legal malpractice suit against respondent on July 30, 1984, alleging that: (1) he had lost the remaining value of the contract, $54,360.18 plus interest, because respondent had neither renewed the UCC-1 nor had he advised appellant that it had to be renewed in five years; and (2) respondent had failed to secure the contract with the real property.[1] Respondent moved for summary judgment, alleging that the applicable four-year statute of limitations had run. The trial court ruled in favor of respondent. Appellant then brought this appeal.

In determining whether the trial court properly granted summary judgment as a matter of law, we do not defer to the trial court, but review its legal conclusions for correctness. *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969 (Utah 1989).

Utah Code Ann. § 78–12–1 (1981) states, "Civil actions can be commenced only within the periods prescribed in this chapter, *after the cause of action shall have accrued,* except where in special cases a different limitation is prescribed by statute."[2] (Emphasis added.) Utah Code Ann. § 78–12–25(1) (1981) then imposes a four-year limitation on several actions including, by implication, legal malpractice claims.[3]

The critical issue in the present matter is the date the alleged malpractice action accrued. Appellant argues the application of either of two rules: (1) the discovery rule, wherein the accrual date begins at the time the injured party discovers, or in the exercise of reasonable care should discover, the negligent act; or (2) the damage rule, wherein the accrual date commences at the time actual injury occurs. Respondent, on the other hand, assumes the position that (1) the accrual date begins at the time of occurrence, the performance of the contract between the attorney and client; or (2) upon termination of legal services to the client in the particular matter.

Although some states have defined the accrual date of malpractice actions through legislative enactment, *see e.g., Martin v. Clements*, 98 Idaho 906, 575 P.2d 885, 887 (1978);[4] most state legislatures, including Utah's, have left the definition of accrual in legal malpractice actions to judicial interpretation. *See e.g., Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131, 134 (1974).

The weight of authority in recent years has shifted toward the view that the statute of limitations for a legal malpractice

---

1. Although appellant raises this issue as part of the alleged negligence of respondent, he failed to address the issue in his brief. On the other hand, respondent quotes from the record and argues that appellant, indeed, was fully aware of all the details of the transaction; that the property was deeded by appellant and his wife to Merkley Motors, Inc. on March 4, 1975; that Merkley Motors, with the consent and knowledge of appellant, executed a mortgage in favor of Walker Bank and Trust Co. on March 15, 1976; and, as a result of that transaction, appellant received a direct benefit of $50,000.00. Respondent asserts that appellant conveyed and mortgaged the property independently from respondent. Whether he did or did not is of no consequence because appellant was obviously fully aware of the status of the real property and, thus, the accrual date of this claim, for purposes of the statute of limitations, would have been March 15, 1976.

2. This section was enacted in 1951 and remained unchanged until it was amended in 1987 to read, "Civil actions may be commenced only within the periods prescribed in this chapter, after the cause of action has accrued, except in specific cases where a different limitation is prescribed by statute."

3. Utah Code Ann. § 78–12–25(1) (1981) states:
   Within four years: (1) an action upon a contract, obligation or liability not founded upon an instrument in writing; also on an open account for goods, wares and merchandise, and for any article charged in a store account; also on an open account for work, labor or services rendered, or materials furnished; provided, that action in all of the foregoing cases may be commenced at any time within four years after the last charge is made or the last payment is received.
   The 1988 amendment to this section made only slight stylistic changes and did not affect its meaning.

4. "Amended I.C. § 5–219(4) provides that an action to recover damages for professional malpractice shall be commenced within two years from the date the action has accrued, and ... 'the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of.'" *Martin v. Clements*, 98 Idaho 906, 575 P.2d 885, 887 (1978).

action accrues at the time the client discovers, or through the use of reasonable diligence should have discovered, the attorney's negligent act. *See Woodruff v. Tomlin*, 511 F.2d 1019, 1021 (6th Cir.1975); *Fort Myers Seafood Packers, Inc., v. Steptoe and Johnson*, 381 F.2d 261, 262 (D.C. Cir.1967); *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829–30 (Alaska 1982); *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792, 794 (1983); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 491 P.2d 421, 430, 98 Cal.Rptr. 837, 846 (1971); *Edwards v. Ford*, 279 So.2d 851, 853 (Fla.1973); *Kohler v. Woollen, Brown & Hawkins*, 15 Ill.App.3d 455, 304 N.E.2d 677, 681 (1973); *Corley v. Logan*, 35 Mich.App. 199, 192 N.W.2d 319, 321 (1971).

In *Hansen v. Petrof Trading Co., Inc.*, 527 P.2d 116 (Utah 1974), the Utah Supreme Court implied that the discovery rule should be given some credence in legal malpractice actions. It quoted, with approval, the trial court's factual finding that if any negligence occurred, it "occurred more than four years prior to the filing of said counterclaim [for malpractice] *and should have been discovered prior to that time.*" *Id.* at 116 (emphasis in original). We think that fundamental fairness also requires the imposition of the discovery rule because the attorney-client relationship is based upon trust, and is a situation in which one less knowledgeable must rely on another, who has special expertise, for advice and assistance. As the Massachusetts court has noted,

> [t]he attorney, like the doctor, is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so. The relation of attorney and client is highly fiduciary in its nature. The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests.

*Hendrickson*, 310 N.E.2d at 135 (citations omitted). The nature of the attorney-client relationship is such that, often, attorney negligence would not be discovered until years after the act had occurred, as is alleged to have happened in the present case. If the occurrence rule applied, the client would have no means of redress for such negligence. Therefore, we hold that a cause of action for legal malpractice accrues, and the four-year statute of limitations commences to run, when the act complained of is discovered or, in the exercise of reasonable care, should have been discovered. For the purpose of determining the accrual date, the trial court

> must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

*Omni–Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941, 944–45 (1988).

Respondent raises the argument that there was no longer an attorney-client relationship after the transaction was completed and, therefore, under the termination of services rule, he had no duty to appellant after 1976. In support thereof, he cites the concurring opinion of Justice Ellett in *Hansen v. Petrof:* "The cause of action, if any there be, should ripen and the statute of limitation begin to run only upon termination of services of the attorney in that particular case." *Hansen*, 527 P.2d at 117. Therefore, respondent reasons, he had no obligation to inform appellant in 1981 that it was necessary to renew the filing of the UCC–1 form.[5]

---

**5.** In a sense, this argument misses the point of appellant's claim. Appellant claims respondent

was negligent in 1976, when the attorney-client relationship was alive and well, in failing to

We disagree, noting that Justice Ellett's comments in *Hansen* are inapplicable to the present case because they relate to a circumstance in which the alleged malpractice acts occurred during a trial, and that "it would be improper to permit or require the client to begin a separate action against his attorney every time he thought the attorney had erred in a trial tactic." *Id.*

We recognize that some jurisdictions, under certain circumstances, support the termination of services rule, albeit in a manner which would not help respondent in this case. For example, the Ohio court has said that "the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, *whichever occurs later.*" *Omni–Food & Fashion, Inc.,* 528 N.E.2d at 942 (emphasis added). Nevertheless, we do not adopt this termination of services rule because it would permit a client with knowledge of the attorney's negligent act to say nothing during a perhaps protracted relationship in connection with the particular transaction they were involved in and, thus, needlessly prolong the attorney's potential exposure to suit long after the client had discovered the malpractice.

Here, the alleged negligence was respondent's failure, at the time of the original transaction, to fully inform appellant of the necessity to refile the UCC–1. In view of the trial court's erroneous conclusion that the statute started to run at the time of the occurrence in 1976, it had no occasion to determine when appellant actually discovered this oversight, or reasonably should have discovered it. If that date is determined to be prior to July 30, 1980, the action is barred by the statute of limitations. If the date is shown to be thereafter, the action is timely and should be decided on its merits. However, on the record before us, that determination cannot be made as a matter of law.

explain at that time that the UCC–1 filing would

We, therefore, reverse and remand for further proceedings consistent with this opinion. We emphasize that this is not a decision on the merits of appellant's claim that respondent was negligent, and leave that determination for the trial court.

BENCH and ORME, JJ., concur.

be effective for only five years unless renewed.