Joseph R. BRUNETTI and Florence
Brunetti, Plaintiffs,

v.

The REGENCY AFFILIATES,
et al., Defendants.

FLYING S LAND & CATTLE
CO., et al., Plaintiffs,

v.

JONES, WALDO, HOLBROOK & Mc-
DONOUGH, a Utah professional
corporation, Defendant.

Nos. 90–C–200W, 91–C–226J.

United States District Court,
D. Utah, C.D.

March 16, 1993.

Rick J. Sutherland, Salt Lake City, UT, for plaintiffs Brunetti.

Daniel W. Jackson, Kenneth A. Okazaki, Prince, Yeates & Geldzahler, Salt Lake City, UT, for defendant and third party plaintiff Regency Group.

R. Brent Stephens, Robert H. Henderson, Snow, Christensen & Martineau, Salt Lake City, UT, for third party defendant Jones, Waldo, Holbrook & McDonough.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

· This matter is before the court on the Motion for Summary Judgment brought by defendant Jones, Waldo, Holbrook & McDonough ("Jones, Waldo") on the claims of plaintiffs Flying S Land & Cattle Co., a Nevada corporation, Regency Group, Inc., a Nevada corporation, The Regency Affiliates, a Nevada nonprofit organization, Regency Group, Inc., a Nevada corporation, Builders Land and Construction Company, a Nevada corporation, Oasis Energy Corporation, a Nevada corporation, International Reserve Investments & Construction Company, a Hawaii corporation, and Genesis I Builders, a California nonprofit organization (collectively "Plaintiffs"). A hearing on the motion was held on February 1, 1993. Jones, Waldo was represented by R. Brent Stephens and Robert H. Henderson. Plaintiffs were represented by Daniel W. Jackson. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. After the hearing, the court took the matter under advisement. Since that time, the court has further considered the law and the facts related to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Jones, Waldo represented plaintiff Flying S Land & Cattle Company ("Flying S") in a bankruptcy proceeding under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada from early 1984 until mid-1986 (the "Bankruptcy Proceeding"). During the course of the representation, Flying S experienced difficulty in paying Jones, Waldo's fees. On March 26, 1986, Jones, Waldo formally withdrew as counsel for Flying S.

On March 1, 1990, Joseph and Florence Brunetti filed a complaint in 90–C–200W against the Plaintiffs alleging RICO violations and various state-law claims against Plaintiffs stemming from a loan transaction between the Brunettis and Plaintiffs. On March 1, 1991, Plaintiffs filed an Answer and Third Party Complaint (the "Third Party Complaint") in that action. The Third Party Complaint made claims against Jones, Waldo for, inter alia, attorney malpractice. On March 4, 1991, Plaintiffs commenced 91–C–226J by filing a Complaint against Jones, Waldo that made similar allegations. Plaintiffs filed a First Amended Complaint in 91–C–226J on March 15, 1991. The above-mentioned actions were consolidated by order of this court on October 31, 1991. Subsequently, on November 10, 1992, Plaintiffs filed their Second Amended Complaint alleging professional malpractice, knowing and intentional violations of the disclosure and conflicts of interest provisions of the United States Bankruptcy Code, and breach of fiduciary duty.[1]

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

1. Plaintiffs' fourth claim for relief, which requests an accounting, is essentially a request for a specific type of relief and does not allege a cause of action separate from Plaintiffs' attorney malpractice claims. *See* Second Am.Compl. at 12–13.

with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.,* 923 F.2d 1417, 1419 (10th Cir.1991).[2] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) (quoting *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552).

In considering whether there exists a genuine issue of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.), *cert. denied,* ── U.S. ──, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[3] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

## III. DISCUSSION

Jones, Waldo has moved this court for summary judgment on Plaintiffs' claims on the basis that they are barred by the statute of limitations. The court addresses the Plaintiffs' claims *seriatim.*

### A. ATTORNEY MALPRACTICE

Plaintiffs' first claim against Jones, Waldo is attorney malpractice. In Utah, attorney malpractice claims are subject to a four-year statute of limitations. Utah Code section 78–12–1 provides that "[c]ivil actions may be commenced only within the periods prescribed in this chapter, after the cause of action has accrued, except in specific cases where a different limitation is prescribed by statute." Utah Code Ann. § 78–12–1 (1992). The applicable statutory period is provided by section 78–12–25(1), which by implication provides a four-year period for the bringing of claims of legal malpractice. *Id.* § 78–12–25(1); *Merkley v. Beaslin,* 778 P.2d 16, 18 (Utah Ct.App. 1989).

In *Merkley,* the Utah Court of Appeals held that a cause of action for legal malpractice accrues, and the statutory period begins to run, "when the act complained of is discovered, or, in the exercise of reasonable care, should have been discovered." *Merkley,* 778 P.2d at 19. Plaintiffs disagree with this statement of the standard, however, in effect arguing that the *Merkley* court did not intend what it said. Instead, Plaintiffs contend the statutory period does not begin to run until a plaintiff suffers injury.

Plaintiffs point out that a tort cause of action accrues when all of its elements come into being and it becomes remedial in

---

**2.** The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**3.** "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

the courts.[4] Plaintiffs further point out that the elements of a cause of action for attorney malpractice include (1) an attorney-client relationship; (2) negligence on the part of the attorney; and (3) injury to the client proximately caused by the attorney's negligence.[5] Therefore, Plaintiffs argue, the four-year period prescribed by section 78-12-25(1) does not begin to run until the client suffers injury, regardless of when the client discovers the complained-of acts. To read *Merkley* otherwise, Plaintiffs contend, would be contrary to section 78-12-1's mandate that the statute of limitations begins to run only after the cause of action has accrued. Moreover, such a reading would lead to incongruous results. For example, in cases where the client knows of the attorney's negligence but has not yet suffered injury, the statutory period may expire before the client could pursue a remedy in the courts.

■■ Although the court is troubled by a rule that, in certain circumstances, would allow the statute of limitations to run before a cause of action has accrued and become remedial in the courts, this court is bound in diversity cases by the substantive law of the state, including state appellate court interpretation of state statutes. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Redford v. Smith,* 543 F.2d 726, 732 (10th 1976). That a state statute of limitations is "substantive" law cannot be disputed. *See Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 108-09, 65 S.Ct. 1464, 1469-70, 89 L.Ed. 2079 (1945). A careful reading of *Merkley* shows that the statutory period for attorney malpractice begins to run on the date a plaintiff discovers, or reasonably should discover, the act complained of, regardless of the existence of an actionable injury. *Merkley,* 778 P.2d at 19.

In *Merkley,* the plaintiff retained the defendant attorney to draft legal documents for the sale of the plaintiff's business. *Id.* at 17. Because the purchase price was not to be paid at closing, the amount owed the plaintiff was to be secured by the real property upon which the business was located and by the business's unencumbered inventory. *Id.* To assure priority in the collateral, the attorney filed a UCC-1 financing statement on the unencumbered inventory and personal property of the business. *Id.*[6]

The UCC-1 filing was not renewed in May 1981 when the original filing expired. *Id.* On December 6, 1983, approximately two and one-half years after the filing should have been renewed, the plaintiff's former business declared bankruptcy. *Id.* Soon thereafter, a bankruptcy auction was conducted. *Id.* Although the value of the property originally secured by the UCC-1 allegedly exceeded the amount still owed the plaintiff, the net proceeds of the sale after the satisfaction of other secured creditors was insufficient to satisfy the debt. *Id.* The plaintiff brought a legal malpractice action against the attorney on July 30, 1984 alleging, *inter alia,* that the attorney was negligent in failing either to renew the UCC-1 or to advise the plaintiff that it had to be renewed in five years. *Id.* at 18.

The trial court granted summary judgment against the plaintiff on the basis that the statute of limitations had expired. *Id.* On appeal, the plaintiff argued that the statute of limitations did not begin to run until either the date he discovered the negligent act (the "Discovery Rule") or the date on which he suffered actual injury (the "Damage Rule"). *Id.* Although the Court of Appeals was presented with an argument for the Damage rule, it adopted the Discovery rule, holding that "a cause of action for legal malpractice accrues, and the four-year statute of limitations commences to run, when the act complained of is discovered, or in the exercise of reason-

---

**4.** *Davidson Lumber v. Bonneville Inv.,* 794 P.2d 11, 19 (Utah 1992).

**5.** *Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 727 (Utah Ct.App.1990); *see also Williams v. Barber,* 765 P.2d 887, 889 (Utah 1988) (opinion of Howe, A.C.J.; Durham, J., concurring in the result; Zimmerman, J., concurring in the result in separate opinion in which Hall, C.J., concurred).

**6.** A financing statement on the real property was never recorded.

able care, should have been discovered." *Id.*

The *Merkley* court reversed the grant of summary judgment and remanded the case for a determination of when the plaintiff actually discovered, or should have discovered, the negligent act. *Id.* at 20. In so doing, the *Merkley* court directed the trial court that if the date of discovery were determined to be prior to July 30, 1980, the plaintiff's action would be barred.[7] *Id.*

The *Merkley* court's directions clearly allowed a finding that the statute of limitations had begin to run prior to the date of injury. The earliest possible date the plaintiff could have suffered "injury" was May of 1981, which is the earliest date on which the plaintiff could have first lost priority as a failure to renew the UCC–1.[8] Moreover, the date on which the *Merkley* plaintiff first suffered actual damages was February 23, 1984, at the Bankruptcy auction. Despite those facts, the *Merkley* court directed the lower court that the statute of limitations would have run if it was determined that the plaintiff discovered the attorney's oversight prior to July 30, 1980, almost one year prior to the time when the plaintiff could have first lost priority as a failure to renew the UCC–1, and almost three and one-half years prior to the date the plaintiff suffered actual damages.

In the case at hand, Plaintiffs' legal malpractice claim is barred if it is determined that Plaintiffs' knew, or reasonably should have known, of the acts complained of on or before March 1, 1987, four years prior to the time Plaintiffs filed the Third Party

Complaint.[9] The allegations in support of this claim are found in Plaintiffs' first and third claims for relief in the Second Amended Complaint.[10]

### 1. Inadequate Disclosure and Conflicts of Interest

■ The first alleged act of malpractice is that Jones, Waldo was not a "disinterested" person under the United States Bankruptcy Code (the "Bankruptcy Code") and had conflicts of interest with Flying S in the Bankruptcy Proceeding as a result of Jones, Waldo's prior representation of Flying S and related entities. Second Am. Compl. ¶¶ 18–19. Plaintiffs allege that Jones, Waldo did not petition the bankruptcy court for appointment as counsel for the debtor or disclose to the court that it was not a disinterested person or that it had conflicts of interest with the debtor. *Id.* ¶¶ 20–21, 33(a). Plaintiffs further allege Jones, Waldo failed to disclose to the Bankruptcy Court that Jones, Waldo entered into "various agreements with the debtor, its affiliates and owners, in which it received payment of pre and post petition fees in cash and received security interests in real property owned by the debtor, its affiliates and owners to secure future payments of pre and post petition fees by the debtor, its affiliates and owners." *Id.* ¶¶ 22, 23, 33(b). Jones, Waldo has presented no evidence on the issue of when Plaintiffs discovered the alleged failures to disclose. Indeed, Jones, Waldo did not specifically address the failures to disclose as acts of negligence, and the record is otherwise

---

**7.** At first glance, it seems incongruous that the *Merkley* court's instructions would allow a finding that the plaintiff discovered, or should have discovered, the complained-of act prior to May of 1981 when the UCC–1 filing first needed to be renewed. However, one of the alleged acts of negligence was the attorney's failure to inform the plaintiff in 1976, when the original UCC–1 filing occurred, that the filing would need to be renewed in five years. *Id.* at 19 n. 5.

**8.** This court does not opine on whether a loss of priority, in itself, prior to a default on the part of a debtor, would constitute actionable injury that would support a cause of action for attorney malpractice.

**9.** The specific allegations made in the Second Amended Complaint relate back to the time of the Third Party Complaint because they arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the Third Party Complaint. Fed.R.Civ.P. 15(c).

**10.** Although Plaintiffs' third claim for relief is styled as one for breach of fiduciary duty, it contains allegations of "breaches [of fiduciary duty] and malpractice" without differentiation among the individual allegations. Second Am. Compl. at 9–10. The gravamen of each of the allegations, however, is attorney malpractice. Accordingly, the court addresses the allegations in the first and third claims for relief here.

insufficient at this point to justify a grant of summary judgment on these allegations.

### 2. Failure to Supervise Associates

■ Plaintiffs allege Jones, Waldo failed to assign qualified counsel to supervise unqualified associates in their representation of Flying S in the Bankruptcy Proceeding. Second Am.Compl. ¶ 33(c). The record reveals, however, that Plaintiffs knew, or reasonably should have known, of this alleged act of malpractice by November 19, 1986, at the latest. In an affidavit bearing that date, and filed in support of Flying S's opposition to Jones, Waldo's claim for fees in the Bankruptcy Proceeding, the then president of Flying S, David V. Eddy, stated that Jones, Waldo had "steadfastly limited [its] professional efforts to negotiation, [sic] delay and filing Debtor plans which were unrealistic in view of the clear proof that the ranch could not possibly support the economic burden placed upon it by the sales contract." Aff't of David V. Eddy Supporting Opp'n to Claim for Legal Fees at 4, Ex. "B" to Jones, Waldo, Holbrook & McDonough's Mot.Summ.J. (hereinafter "Eddy Affidavit"). Such a statement evidences knowledge on the part of Plaintiffs that Jones, Waldo's representation was allegedly deficient. At minimum, it would support a finding that Plaintiffs reasonably should have known of the complained-of act, especially in light of the fact that by the date of the Eddy Affidavit, Jones, Waldo had severed the attorney-client relationship with Plaintiffs, and Plaintiffs had formally opposed Jones, Waldo's claim for legal fees in the Bankruptcy Proceeding. Plaintiffs have not provided any evidence that they did not know of Jones, Waldo's failure to supervise its associates by the date of the Eddy Affidavit or that any special circumstances existed that would have inhibited their discovery of the alleged failure.

The conclusion that Plaintiffs knew, or should have known, prior to March 1, 1987 of the alleged failure to supervise is buttressed by the conclusion that the sole factual source of this allegation appears to be the alleged dual representation of Plaintiffs and a creditor of Plaintiffs by a Jones, Waldo associate in certain loan transactions in 1985. Each of the prior pleadings—the Third Party Complaint, the Complaint, and the First Amended Complaint—contain a specific claim for relief based on "negligent supervision." Third Pty.Compl. at 17–18; Compl. at 14–15; First Am. Compl. at 15–16. The facts pled in support of the claim for negligent supervision are that in 1985 a Jones, Waldo associate arranged two loans, each in the amount of $50,000.00, from third parties to the Regency Group for the purpose of paying Flying S's legal fees. The Plaintiffs allege a Jones, Waldo associate represented both the Regency Group and the creditor in those loan transactions, drafted the loan documents in a manner highly unfavorable or unconscionable to Flying S and the Regency Group, and coerced Flying S and the Regency Group into agreeing to the terms of the loans. According to Plaintiffs, Jones, Waldo was negligent in failing to prevent these actions. Third Pty.Compl. at 17–18; Compl. at 14–15; First Am.Compl. at 15–16.

At the time of the loans, Plaintiffs had knowledge that the Jones, Waldo associate drafted the loan documents, the terms of the loans, and the circumstances under which the Regency Group and Flying S were asked to agree to the loans. The fact that the associate committed the complained-of acts without interference or subsequent correction by Jones, Waldo demonstrates Jones, Waldo's lack of supervision or acquiescence in those actions. Therefore, based on Plaintiffs' knowledge in November 1986, as evidenced by the Eddy Affidavit, of Jones, Waldo's alleged deficient representation, and on Plaintiffs' knowledge in 1985 of the circumstances surrounding the loan transactions, summary judgment is granted on this allegation.

### 3. Failure to Preserve Property of the Estate

Plaintiffs allege Jones, Waldo "[failed] to adequately investigate and preserve property of the estate and properties provided by affiliates to assist the reorganization

effort." Second Am.Compl. ¶ 33(d). As noted above, the Eddy Affidavit states that Plaintiffs believed as of November 19, 1986, that Jones, Waldo was generally limiting its efforts in its representation of Flying S in the Bankruptcy Proceeding and filing unrealistic reorganization plans. Eddy Affidavit at 4. Also as above, Plaintiffs provide no evidence that Plaintiffs did not know, or reasonably should not have known, prior to March 1, 1987, that Jones, Waldo's representation of Flying S in the Bankruptcy Proceeding was deficient.[11] Summary judgement is therefore granted on this allegation.

### 4. Drafting of a Frivolous Complaint

Plaintiffs allege Jones, Waldo committed malpractice by drafting a frivolous complaint that Jones, Waldo knew lacked merit at the time of the drafting. Second Am. Compl. ¶ 33(e). Plaintiffs clearly knew of this alleged act of malpractice by November 19, 1986 at the latest. The Eddy Affidavit states that corporate representatives of Flying S demanded that Jones, Waldo bring an adversary proceeding to remedy the fraud Plaintiffs allege was practiced on Flying S by Robert J. Beaumont, that Jones, Waldo initially refused, and that Jones, Waldo eventually drafted the requested complaint but failed to file it.

Eddy Affidavit at 2–4. Therefore, Plaintiffs knew by November 19, 1986, at the latest, that Jones, Waldo had drafted a complaint against Mr. Beaumont. Summary judgment is granted on this allegation.[12]

### 5. Misrepresentations Regarding the Value of the Claims Advanced in the "Frivolous" Complaint

■ Plaintiffs contend Jones, Waldo made misrepresentations to Flying S concerning the value of the claims advanced in the "frivolous" complaint it drafted against Robert Beaumont and its use as a negotiation tool. Second Am.Compl. ¶ 33(f). The nature and content of these alleged misrepresentations is unclear from the record and Jones, Waldo has failed to address this point in its memoranda filed in support of summary judgment. The court is therefore unable to determine when Plaintiffs discovered, or should have discovered, the alleged misrepresentations, and summary judgment is inappropriate on this allegation.

### 6. Loans and Security Interests

Plaintiffs allege Jones, Waldo obtained cash for the payment of pre- and postpetition fees through unconscionable loan

---

**11.** To the extent this allegation of Plaintiffs refers to the failure to pursue an adversary proceeding for fraud against a creditor in the Bankruptcy Proceeding, as was extensively complained-of in the first three complaints, *see* Third–Party Compl. at 10–15; Compl. at 3–9; First Am.Compl. at 4–9, the Eddy Affidavit clearly establishes that Plaintiffs had knowledge of such a failure by November 19, 1986, at the latest. The Eddy Affidavit states that "Affiant and his fellow corporate officers insisted that its said attorneys bring appropriate action to remedy the fraud practiced by Sellers upon 'Flying 'S' [sic], to which demand said attorneys declined to obey because such action would cost as much as $450,000.00, in legal fees, which Flying 'S' did not have available to pay." Eddy Affidavit at 2. The affidavit also provides: "The corporate representatives of Flying 'S' continued to insist that Jones, Waldo, Holbrook & McDonough bring legal action against Robert J. Beaumont for fraud in procuring the sale of the ranch and cattle. Finally, on or about August 12, 1985, the said law firm caused a 'complaint' to be drawn.... Although the said law firm charged $35,000,00 for drawing the 'complaint', [sic] it

refused to file same unless Flying 'S' delivered additional funds to it." *Id.* at 3. Finally, the affidavit states: "The present legal representative of Flying 'S' has advised that a suit against Robert J. Beaumont should have been brought simutaniously [sic] with its petition under Chapter 11, and has himself commenced timely proceedings to cause a speedy adjudication of the fraud claims against Mr. Beaumont." *Id.* at 4.

**12.** It is somewhat curious that Plaintiffs now characterize the complaint drafted by Jones, Waldo against Mr. Beaumont as "frivolous" in light of the fact that each of Plaintiffs' pleadings preceding the Second Amended Complaint allege that the failure of Jones, Waldo to pursue an action against Mr. Beaumont was an act of malpractice. *See supra* note 11. Moreover, Plaintiffs' agent, David V. Eddy, filed a pro-se complaint against Mr. Beaumont in the Eighth Judicial District Court of Nevada, using the complaint drafted by Jones, Waldo as a guide. Debtors Examination of David V. Eddy (1/23/87) at 161, Ex. "E" to Jones, Waldo, Holbrook & McDonough's Mot.Summ.J.

arrangements and the proceeds of unconscionable loan arrangements and obtained "competing interests in properties and assets that were intended to be used in the reorganization of the debtor" through "[n]umerous acts of self-dealing." Second Am.Compl. ¶ 33(g)–(i). Plaintiffs knew, however, at the time they entered into the various loan arrangements and security agreements both of the terms of the transactions and of the circumstances under which the transactions were entered into. The Plaintiffs have not pointed to any loan arrangements or security agreements that took place after the time Jones, Waldo withdrew from the representation of Flying S on March 26, 1986. Therefore, Plaintiffs knew of the complained-of transactions no later than that date. Summary judgment is granted on these allegations.

### 7. Excessive Fees

Plaintiffs contend Jones, Waldo charged excessive, unsubstantiated fees and conditioned representation of the debtor on the acceptance of the amount of those fees and the terms of their repayment. Second Am. Compl. ¶ 33(j). Summary judgment is appropriate on this allegation, however, because the record is clear that Plaintiffs knew by November 24, 1986, at the latest, that Jones, Waldo's fees were allegedly excessive. On that date, Flying S filed an opposition to Jones, Waldo's claim in the Bankruptcy Proceeding for payment of legal fees "upon the ground that the fees paid in advance, unto Debtor's former legal representatives, in cash, are for in excess of reasonable legal charges considering the actual services rendered and level of expertise application [sic] in this matter." Debtor's Opp'n to Claim for Former Legal Representative for Payment of Legal Fees as Priority Claim at 1, Ex. "C" to Jones, Waldo, Holbrook & McDonough's Mot.Summ.J. Furthermore, Flying S opposed the payment of all legal fees in excess of $62,-350.00 "in view of other liens creditor Jones, Waldo, Holbrook & McDonough have forced from Debtor's associate companies, which are in excess of $200,000.00, coupled with their failure to follow repeated demands of Debtor to promptly pursue a seller fraud claim...." *Id.* Summary judgment is granted on this allegation.

### 8. Delaying the Reorganization Effort and Bankruptcy Proceeding

Plaintiffs allege Jones, Waldo "negligently and intentionally delay[ed] the reorganization effort through the preparation and filing of plans of reorganization that were not feasible." Second Am.Compl. ¶ 33(k). Furthermore, Plaintiffs claim Jones, Waldo "negligently and intentionally delay[ed] the bankruptcy proceeding by failing to actively pursue efforts necessary for the reorganization of the debtor because of self interests of Jones Waldo and its concern that prepetition and postpetition fees would not be paid." *Id.* ¶ 33(1). These claims are untimely, however, because the Eddy Affidavit demonstrates that Plaintiffs knew of the above alleged acts by November 19, 1986, at the latest. The Eddy Affidavit specifically states that Jones, Waldo "steadfastly limited [its] professional efforts to negotiation, [sic] delay and filing Debtor plans which were unrealistic in view of the clear proof that the ranch could not possibly support the economic burden placed upon it by the sales contract." Eddy Affidavit at 4. In addition, the Eddy Affidavit states that Jones, Waldo refused to represent Flying S at a hearing in the Bankruptcy Proceeding unless various entities related to Flying S pledged stock to secure the payment of legal fees owed Jones, Waldo and refused to pursue an adversary proceeding against Robert Beaumont due to concerns about Plaintiffs' ability to pay Jones, Waldo's legal fees. *Id.* at 3. As the Eddy Affidavit demonstrates, Plaintiffs clearly knew, or should have known, by November 19, 1986, of the preceding complained-of acts. Summary Judgment is therefore granted on these allegations.

### 9. Abandonment of Flying S in the Bankruptcy Proceeding

Plaintiffs' final allegation of malpractice is that Jones, Waldo abandoned the debtor. Second Am.Compl. ¶ 33(m). Summary

Judgment is granted on this allegation, however, because it is clear that Plaintiffs knew of this act on March 26, 1986, when Jones, Waldo formally withdrew as counsel for Flying S.

## B. INADEQUATE DISCLOSURE AND CONFLICTS OF INTEREST

■ Plaintiffs' second claim for relief is that Jones, Waldo intentionally and knowingly violated the disclosure and conflict of interest provisions of the Bankruptcy Code. Apart from a claim for malpractice, however, such violations do not provide a basis for affirmative relief. Section 329 of the Bankruptcy Code requires an attorney who is representing a debtor in a bankruptcy case to file with the court a statement of the source and amount of the compensation paid or agreed to be paid, if such payment or agreement was made within the year preceding the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case. 11 U.S.C.A. § 329(a) (West Supp. 1992).[13] The court may then deny compensation, order a refund of any fees paid, or cancel a payment agreement to the extent it deems the compensation exceeds the reasonable value of the services rendered. *Id.* § 329(b).

In addition, section 328 of the Bankruptcy Code empowers the court to deny allowance of the compensation, and reimbursement for expenses, of an attorney who is not a disinterested person, or who represents or holds an interest adverse to the interest of the estate with respect to the matter on which the attorney is employed. *Id.* § 328(c) (West 1979). Sections 328 and 329 do not provide a basis for affirmative relief outside of the court having jurisdiction of the estate. *See Lazarus, Michel & Lazarus v. Prentice,* 234 U.S. 263, 268, 34 S.Ct. 851, 853, 58 L.Ed. 1305 (1913); *In re Wood & Henderson,* 210 U.S. 246, 250–51, 257, 28 S.Ct. 621, 623–24, 626, 52 L.Ed. 1046 (1908); 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 329.05, at 329–27 (15th ed. 1992). Therefore, summary judgment is granted against Plaintiffs' second claim for relief.

## IV. ORDER

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Consistent with the terms of this Memorandum Decision and Order, Jones, Waldo's Motion for Summary Judgment is granted on the following issues:

a. Plaintiffs' claim that Jones, Waldo failed adequately to supervise associates;

b. Plaintiffs' claim that Jones, Waldo failed adequately to investigate and preserve property of the estate in the Bankruptcy Proceeding;

c. Plaintiffs' claim that Jones, Waldo drafted a frivolous complaint;

d. Plaintiffs' claim that Jones, Waldo obtained cash for the payment of pre- and post-petition fees through unconscionable loan arrangements that jeopardized assets intended for use in the reorganization effort;

e. Plaintiffs' claim that Jones, Waldo obtained competing security interests in properties and assets intended for use in the reorganization effort through acts of self dealing;

f. Plaintiffs' claim that Jones, Waldo received unauthorized payment of post-petition fees through proceeds of unconscionable loan arrangements;

g. Plaintiffs' claim that Jones, Waldo charged excessive and unsubstantiated fees and conditioned representation of the debtor in the Bankruptcy Proceeding upon acceptance of the amount and terms of the repayment of said fees;

h. Plaintiffs' claim that Jones, Waldo negligently and intentionally delayed the reorganization effort by preparing and filing plans of reorganization that were not feasible;

i. Plaintiffs' claim that Jones, Waldo negligently and intentionally delayed the Bankruptcy Proceeding by failing to active-

---

**13.** Additional disclosure requirements are set forth in Bankruptcy Rules 2016 and 2017. *See* 11 U.S.C.A.Bankr.Rules 2016, 2017 (West Supp. 1992).

ly pursue efforts necessary for the reorganization of the debtor as a result of Jones, Waldo's pursuit of its self interests and because of its concern that its pre- and post-petition fees would not be paid;

j. Plaintiffs' claim that Jones, Waldo wrongfully abandoned the debtor in the Bankruptcy Proceeding.

2. Consistent with the terms of this Memorandum Decision and Order, Jones, Waldo's Motion for Summary Judgment is denied on the following issues:

a. Plaintiffs' claim that Jones, Waldo committed malpractice by failing to seek court approval to act as counsel for the debtor in the Bankruptcy Proceeding, by failing to disclose to the bankruptcy court that Jones, Waldo was not a disinterested person and had potential and actual conflicts of interest, and by failing to disclose to the bankruptcy court that Jones, Waldo had entered into various fee payment and security arrangements.

b. Plaintiffs' claim that Jones, Waldo committed malpractice by misrepresenting to the debtor and its affiliates the value of the claims advanced in the "frivolous" complaint and its use as a negotiating tool.

3. The court rules that, apart from the above claims of malpractice, the disclosure and conflict of interest provisions of the Bankruptcy Code do not provide an affirmative basis for relief.

4. This Memorandum Decision and Order will suffice as the court's ruling and counsel need prepare no further order.