**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SAMUEL L. BOYD,

      Plaintiff - Appellant,

v.

JEFFREY M. JONES and DURHAM,
JONES, & PINEGAR, a Professional
Corporation (f/k/a Durham, Evans,
Jones & Pinegar),

      Defendants - Appellees.

No. 01-4248
(D.C. No. 2:00-CV-472-K)
(Dist. Utah)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**ARMIJO**,[**] District Judge.


      Plaintiff-Appellant, Samuel L. Boyd, appeals the dismissal of his case for

legal malpractice against the firm of Durham, Jones, & Pinegar, and its principal

---

     [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

     [**] The Honorable Christina M. Armijo, District Court Judge, District of
New Mexico, sitting by designation.

Jeffrey M. Jones (collectively "DJP" or "the firm"). DJP had represented Boyd in an unrelated suit that had been dismissed from state court for failure to prosecute.

The federal district court found that Boyd's complaint of legal malpractice against DJP was time-barred. It first determined that his claim sounded in tort under Utah law. It then found that the applicable four-year statute of limitations for tort claims in Utah began to run when Boyd was initially notified of the alleged malpractice by the dismissal of his state suit by the trial court for failure to prosecute, not from when the dismissal became final by denial of relief from the Utah Supreme Court.

Boyd appeals from the district court's dismissal of his case as untimely, and from the court's denial of his various motions to amend his pleadings after judgment, to alter or amend the judgment, or to relieve him from the judgment. He further requests certification to the Utah Supreme Court of the question of when the statute of limitations began to run.

We **REVERSE** the district court's grant of summary judgment because the newly decided Utah Supreme Court decision of Clark v. Deloitte & Touche, LLP, 34 P.3d 209 (Utah 2001), determines that the statute of limitations for tort actions based on professional malpractice begins to run only after the damages from the alleged malpractice become final, which in this case was after the appeal time had expired. Boyd's claim for legal malpractice against DJP was filed within four

years of that date and so it was timely. Accordingly, we **REMAND** for further examination of Boyd's claim by the district court. We also **DENY** Boyd's request for certification of the question of when the statute of limitations begins to run in light of Clark.

## BACKGROUND

Samuel L. Boyd is an attorney in his own right who brought suit for alleged malpractice against Jeffery M. Jones and the firm of Durham, Jones & Pinegar. In the wake of a failed stock acquisition, Boyd filed a lawsuit in Utah state court alleging breach of contract and fraud against the company that issued the stock. In the middle of that suit, he fired his first attorney and hired DJP to represent him. On June 1, 1995, the Utah courts dismissed Boyd's stock acquisition suit for failure to prosecute; on June 16, 1995, his motion for reconsideration was denied.

DJP unsuccessfully appealed the dismissal, and relief was denied by the Utah Court of Appeals on September 26, 1996, and by the Utah Supreme Court on February 7, 1997. DJP notified Boyd of the Utah Supreme Court's denial of certiorari by letter in November 1998, more than a year and a half later.

Boyd brought the instant action for malpractice against DJP in federal court on June 9, 2000. His complaint alleged that DJP "failed to act with reasonable skill, care and diligence to pursue the [lawsuit in state court]."

The federal district court found that Boyd's action for malpractice was barred by the statute of limitations. It first determined that the case sounded in tort rather than in contract. Next, the district court determined that the four-year term of the statute of limitations for tort actions had run by the time Boyd filed his claim. Under Utah law, the statute of limitations begins to run upon "the occurrence of the last event required to form the elements of the cause of action." The district court reasoned that Boyd had notice of DJP's alleged malpractice in allowing his case to be dismissed for lack of prosecution by June 1, 1995, when the Utah trial court first dismissed his suit, and certainly by June 16, 1995, when his motion for reconsideration was denied. Boyd filed suit in federal court in June of 2000, well beyond four years from these dates.

In a separate order, the district court also denied the motions Boyd made to amend his pleadings under Fed. R. Civ. P. 15(b), to alter or amend judgment under Fed. R. Civ. P. 59, and to be relieved from judgment under Fed. R. Civ. P. 60(b). The district court explained that Boyd's motion to amend his pleadings under Fed. R. Civ. P. 15(b) was both untimely and futile. The amended pleading would be untimely because judgment had already been rendered, and futile because any new argument Boyd made from the facts of the case would similarly sound in tort and similarly be barred by the statute of limitations. Boyd's remaining motions under Fed. R. Civ. P. 59 & 60(b) were rejected because he made no new arguments and

- 4 -

motions for reconsideration were not appropriate vehicles for rehashing arguments that had failed before.

On appeal, Boyd objects to both of the district court's orders. Boyd initially argues that the district court erred in dismissing his case at the summary judgment stage for being barred by the statute of limitations. His arguments are (1) that not all of his claims should have been construed as sounding in tort; (2) that the Utah Supreme Court's new decision in Clark signifies that the statute of limitation should only run from when his appeals became final in state court, not from when his case was first dismissed by the trial court for lack of prosecution; and (3) that the statute of limitations should be equitably tolled. Boyd further argues that the district court erred in denying his motions to amend his pleadings or to petition for rehearing. He submits a motion to certify to the Utah Supreme Court the question of when the statute of limitations began to run.

We agree with the district court that Boyd's claim sounds in tort, but REVERSE the district court on the question of when the four-year statute of limitations began to run. We conclude that Boyd's claim for malpractice was timely and we REMAND for further consideration by the district court. We need not reach the issue of whether the statute of limitations should be equitably tolled. We DENY as moot Boyd's motion for certification to the Utah Supreme Court of when the statute of limitations began to run.

## DISCUSSION

The district court exercised diversity jurisdiction under 28 U.S.C. § 1332. We hear Boyd's appeal from its final judgment under 28 U.S.C. §§ 1291 and 1294(1), and review the district court's interpretation of law de novo. Elder v. Holloway, 510 U.S. 510, 516 (1994); Dang v. UNUM Life Ins. Co. of Am., 175 F.3d 1186,1189 (10th Cir. 1999).

## I.   WHETHER BOYD'S CLAIM SOUNDED IN TORT OR IN CONTRACT

Under Utah law, "a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations." Doit, Inc. v. Touche, Ross & Co., 926 P.2d 835, 842 n.13 (Utah 1996) (quoting Malone v. University of Kansas Med. Ctr., 552 P.2d 885, 889 (Kan. 1976)). Utah courts characterize a cause of action by looking to the underlying nature of the action and not to the labels chosen in pleadings. Doit, 926 P.2d at 842 n.13; Records v. Briggs, 887 P.2d 864, 868 (Utah 1994). In determining whether the underlying nature of an action sounds in tort or contract, the test is whether the duties imposed are based on what is reasonable given the general standards of conduct for a profession. See e.g., Doit, 926 P.2d at 842 n.13 ("The wrongs plaintiffs allege are that the [professional service providers] failed to perform

[their obligations] in accordance with the duties imposed upon them, not by the specific terms of their contracts, but under Utah law and the professional standards of [their] profession.").

Boyd's complaint labeled three causes of action: negligence, breach of contract, and breach of fiduciary duty. In his claim for negligence, Boyd alleged that DJP failed to represent him in the state suit "in accordance with the standard of care expected of a reasonably competent attorney." In his claim for breach of contract, Boyd alleged that DJP failed to "perform the contract in good faith and with skill, care, and diligence." He did not cite any portion of a contract that specified a particular contractual standard of skill, care, or diligence. Finally, in his claim for breach of fiduciary duty, Boyd alleged that DJP owed him "fiduciary duties with regard to [its] representation of [him] in the Lawsuit," but similarly failed to specify what those duties might be.

After reviewing Boyd's complaint, we agree that the allegation that DJP essentially "failed to exercise the reasonable care which the law requires" is at the heart of each of Boyd's claims. See Doit, 926 P.2d at 842 n.13. Applying "the standard of care expected of a reasonably competent attorney" requires the intervention of a court to determine and apply the standard of care relevant to the legal profession from the background of the common law. Boyd's complaint gives no indication that the contract imposed any special standard of "skill, care, or

- 7 -

diligence" for performance under the contract, nor does it allege any contractual

"fiduciary duty" above and beyond that understood in the common law as existing

between a professional services corporation and its client.

Accordingly, because the duty of care related by Boyd's complaint is

imposed upon DJP by the common law and not more particularly specified, we

agree with the district court in finding under Utah law that his claim sounded in

tort.


## II.    WHEN THE STATUTE OF LIMITATIONS BEGINS TO RUN IN TORT CLAIMS FOR MALPRACTICE UNDER UTAH LAW

The rule in Utah is that the statute of limitations begins to run upon "the

happening of the last event necessary to complete the cause of action."  Clark v.

Deloitte & Touche, LLP, 34 P.3d 209, 216 (Utah 2001) (internal quotation

omitted).

Boyd argues that the four-year statute of limitation for tort actions should

run only from when his case was no longer appealable – in this case when the

Supreme Court of Utah had denied certiorari – not from when he was initially

notified of the possible malpractice by the trial court's dismissal of his case for

failure to prosecute.  Boyd relies primarily on Clark for this assertion.  We agree

that Clark controls.

In Clark, an accountant had erroneously counseled his clients that they could treat a particular asset as a capital gain, rather than as income. Deveaux and Marjorie Clark, a married couple, had engaged Vernon Calder, of Deloitte & Touche, LLP, to be their accountant. When the IRS pursued the Clarks for back taxes and penalties, they relied on Calder's advice, proceeding through the administrative process ultimately to receive a final judgment from the U.S. Tax Court. The Utah Supreme Court found that the clients' claim of malpractice against their accountant was timely because it was filed within four years of the Tax Court's final judgment. The Utah Supreme Court held that it was only after the Tax Court had rendered final judgment that the clients could know they had damages from the alleged malpractice and thus had a complete claim.

The federal district court here attempted to distinguish Clark on the ground that Boyd knew of DJP's alleged negligence in failing to prosecute his claim as of the time his case was initially dismissed by the trial court. The district court concluded that this notice of the failure to prosecute the case established the last element of an entirely complete claim. It therefore held that the initial dismissal of Boyd's case constituted "the existence of a redressable harm or injury [such that] . . . the injured party kn[ew] or should [have] know[n] of either the injury or the negligent act." See Clark, 34 P.3d at 215-216 (citation omitted). The district court's interpretation comported with prior Utah cases such as Williams v.

- 9 -

Howard, 970 P.2d 1282, 1284 (Utah 1998), and Merkley v. Beaslin, 778 P.2d 16, 20 (Utah Ct. App. 1989), although neither case is controlling here because neither case involved attorneys' conduct in ongoing litigation, the effect of which could not be known until the expiration of the appeals process.

The district court, in particular, failed to account for Clark's discussion of the finality of damages. In bringing suit against a professional services corporation for malpractice when the underlying case is still pending in the court system, the Utah Supreme Court explained that the problem of evaluating damages is two-fold.

First, as in Clark, Boyd could not know if a redressable harm existed until the exhaustion of litigation. The Utah Supreme Court in Clark found persuasive the fact that, until the time that a non-appealable judgment is entered against them, clients only know that their accountant, for example, "might have been negligent[:] . . . if the tax court [had not upheld] the deficiency, [his clients] would not have [had] a cause of action against [him] for . . . malpractice." Clark, 34 P.3d at 216 (quoting Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla. 1990)) (emphasis added) (additional citation omitted). Forcing litigants to file malpractice actions in this manner before knowing the ultimate result of an appeal on the merits may also undermine the principle of mitigation of damages.

Second, it would be "illogical and unjustified" for the legal system itself to require a client to argue inconsistent positions in simultaneous litigation. Id. The client would have to assert one position in the ongoing claim on the merits and the opposite position against the professional services provider in the malpractice action. The Clark Court used the tax court for illustration: "In the tax court, [clients] would be asserting that the deduction [their accountant] advised them to take was proper, while they would [have to] simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that [their accountant's] advice was malpractice." Id. (quoting Peat, Marwick, 565 So.2d at 1326). Forcing litigants to take contradictory positions in simultaneous litigation would not only "contravene equity principles and good policy, but also create the risk of inconsistent verdicts and raise problems regarding judicial admissions and estoppel." Id. at 217 (citation omitted).

In light of these considerations, the Clark Court clarified when the statute of limitations begins to run in the situation involving a malpractice action against a provider of professional services who had been involved in the underlying litigation. The Utah Supreme Court focused on the moment when damages from the alleged malpractice action became sufficiently final for the plaintiffs to know that they could bring a malpractice claim. Id. at 215. In the words of the Utah Supreme Court, the limitations period does not then begin to run until "the

happening of the last event necessary to complete the cause of action," which here would be the finalization of damages that occurred only after the dismissal of the underlying suit became final.  See id. at 216 (quoting Berenda v. Langford, 914 P.2d 45, 50 (Utah 1996)) (emphasis omitted).  Thus, in application to a claim against an attorney for malpractice in a litigation proceeding, a party's claims would not accrue until the case in which the malpractice is alleged to be a factor proceeded to a final decision in the last court to which appeal was made.  See generally id. at 218 (providing as an example that, "if the Clarks had received erroneous advice from a tax attorney, as opposed to an accountant, their claim for malpractice would not have accrued until the Tax Court's final decision.") (citing Pizel v. Zuspann, 795 P.2d 42, 56 (Kan. 1990), and Amfac Distribution Corp. v. Miller, 673 P.2d 792, 793 (Ariz. 1983) (en banc)).

## CONCLUSION

We read the Utah Supreme Court's recent decision in Clark to hold that the four-year statute of limitations in Boyd's case against DJP began to run only upon entry of the last non-appealable decision in the underlying case in which the malpractice is alleged to be a factor.  This was the point at which the damages from DJP's alleged malpractice became final for purposes of filing his malpractice claim.  The Supreme Court of Utah denied relief in Boyd's state court case on

- 12 -

February 7, 1997.  Boyd filed in federal court against DJP less than four years later on June 9, 2000.  His case against DJP is therefore timely.

Accordingly, we **REVERSE** the district court's dismissal of the case and **REMAND** for further proceedings.  We **DENY** Boyd's motion to certify to the Utah Supreme Court the question of when the statute of limitations began to run.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge